IN THE

## Supreme Court of the State of Georgia,

## AT MILLEDGEVILLE,

## JUNE TERM, 1868.

Present—HIRAM WARNER, *Chief Justice.*
IVERSON L. HARRIS, } *Judges.*
DAWSON A. WALKER, }

JOHN S. CLEMENTS, plaintiff in error, *vs.* ELIZABETH BOST-
WICK and JAMES MORROW, administrator of C. D. Bost-
wick, deceased, defendants in error.

When the husband of a married woman died seized and possessed of a
tract of land, having the legal title thereto, the widow is entitled, under
the provisions of the Code, to her dower therein; and the vendor's
*equitable* lien for part of the unpaid purchase money, which was not
enforced during the lifetime of the husband, will not override or defeat
the widow's *legal* right to her dower in the land.

HARRIS, J. dissenting.

Equity. Injunction. Decided by Judge VASON. Cal-
houn Superior Court. November Adjourned Term, 1867.

On the 19th of November, 1860, Clements conveyed, in
fee simple, to Charles D. Bostwick, a plantation in Calhoun
county. The consideration therefor was Bostwick's promise

VOL. XXXVIII—1.

to pay $8,870 00 in cotton, at nine cents per pound.    Of this amount, $2,217 00 was payable on the 15th of December, 1862, and $2,218 00 on the 15th of December, 1863, each bearing interest from the first of January, 1862.

Clements took no security, but relied upon his vendor's lien.    Bostwick failed to pay the two amounts last named, according to his promise, and on the days when this cotton was due it was worth thirty cents per pound.    In 1866, Bostwick died intestate, seized of said plantation.    His wife, Elizabeth Bostwick, survived him.    Morrow administered on his estate.    The widow applied for an assignment of dower, and commissioners were appointed by the Court, and were proceeding to administer her dower out of said plantation.

Bostwick's estate is insolvent and insufficient to pay debts of the dignity of promissory notes and of higher dignity. Who are the creditors, and what is the dignity of their several claims, is unknown to Clements.    The administrator denies that Clements has any lien on the plantation, and contends that, if he has, the claim of the widow to dower is paramount to it.

For these reasons Clements filed his bill to discover the claims against the estate, and prayed that the widow be enjoined from taking dower out of said premises, and that he, Clements, should have his vendor's lien thereon, to the exclusion of her dower and of the other creditors.

The Chancellor ordered the defendants to shew cause why the injunction should not be granted.    Upon demurrer and argument had, Judge Vason refused the injunction, holding that the bill was insufficient, in not charging notice on the creditors of Bostwick, and because the vendor's lien was not paramount to the widow's right to dower.    This Clements assigned as error.

STROZIER, BOWER, for plaintiff in error.

LYON & DEGRAFFENRIED, for defendants in error.

Clements *vs.* Bostwick, and Morrow. adm'r.

WARNER, C. J.

The main question presented by the record in this case for our consideration, and judgment, is, whether the widow of Bostwick is entitled to dower in the land sold and conveyed by Clements to Bostwick in his lifetime, to the exclusion of the vendor's lien upon the land for that portion of the purchase money which was unpaid at the time of Bostwick's death. By the 1753 section of the Code, dower is declared to be, the right of a wife to an estate-for-life in one-third of the lands according to valuation, including the dwelling house, (which is not to be valued unless in a town or city,) of which *the husband was seized and possessed at the time of his death*, or to which the husband obtained title in right of his wife. To entitle the widow to dower in the land of her deceased husband, she must prove a lawful marriage, the death of her husband, and that he was lawfully seized and possessed of the land, *at the time of his death*. The marriage of the parties, the death of the husband, and his seizin of the land at the time of his death is not denied, nor controverted. But it is insisted, that this *legal* estate of the wife, intended by the common law, as well as by our own Code, for the sustenance of the wife, and the nurture and education of the younger children, should be made *subordinate* to the latent equity of the vendor's lien for the unpaid purchase money for the land sold and conveyed to the deceased husband.

That the widow has the *legal* title to her dower in the land, there can be no doubt. Shall the latent equity of the vendor's lien for the unpaid purchase money of the land, which was not enforced during the lifetime of the husband, be allowed to override, and defeat the *legal* title of the wife to her dower in the land, after the death of her husband? The vendor of the land might have retained the title in his own hands until the purchase money was paid, but if he conveyed the legal title to Bostwick, relying upon his vendor's lien for his security for the purchase money, he took the *risk* of the legal consequences which would result in

case of the death of Bostwick, and if he failed to enforce his vendor's lien during his life, he cannot reasonably complain of the effect and operation of the public law, which gives to the widow her dower in the land conveyed by him to her deceased husband. It may have been, that the vendor did not contemplate the death of his vendee before the purchase money for the land was paid, when he conveyed the legal title to the land to him, but that cannot effect the widow's *legal* right to dower in the lands of which her husband was *seized and possessed at the time of his death.*

After a careful examination of the provisions of the Code, we think it was manifestly the intention of the Legislature that the widow's *legal* right to dower in the lands of her deceased husband, should be superior to *all liens*—and especially to the secret vendor's lien. By the 1759th section of the Code it is declared, that "no lien created by the husband in his life-time, though assented to by the wife, shall in any manner interfere with her right to dower." So when the widow elects to take a sum of money in lieu of her dower in her deceased husband's land, it is declared, that the amount awarded by the commissioners appointed to assign her dower, "shall be paid in preference to *all other claims* out of the proceeds of the sale of the land." Code, section 1761. In the judgment of the majority of the Court, the widow's *legal* right to dower in the land mentioned in the record, must prevail over the *equitable* claim of the vendor's lien which is attempted to be enforced after the death of the husband. Let the judgment of the Court below be affirmed.

WALKER, J., concurred, but wrote out no opinion.

HARRIS, J., dissenting.

At December Term, 1867, of this Court, a case from Hancock, *Devereux and another*, was before it, in which the right of a widow to an actual assignment of dower in the lands of a deceased insolvent husband, *unaffected* by a judgment which had been obtained against him before his marriage, was affirmed.

Clements *vs.* Bostwick, and Morrow, adm'r.

I dissented from the decision of my associates, but having omitted to file an opinion then, I avail myself of the occasion presented at this term, in which the widow's right to an assignment of dower has been held as paramount to the vendor's lien on the land or its proceeds, for *the unpaid purchase money*, to present an outline of the views which have led me to differ so widely from my colleagues as to the nature of dower and the transcendent right which they assert belongs · to the widow under our laws.

Whilst at this time, by the Code, no such thing as a vendor's lien is recognized in Georgia, it is to be borne in mind that the case in the record originated before the repeal referred to, and is therefore to be decided on the principles controlling courts of equity before that repeal.

The grounds, as I understand my associates, upon which they have predicated their judgment, are the following:

1st. That Lord Bacon and Lord Coke tell us that *magna charta* favors three things, " life, liberty and dower."

2d. That by the Act of 1768, Cobb's Digest, 63, the widow was not barred of dower or right to it in mortgaged lands, unless she legally relinquished her right.

3d. That by the Act of 1826, she was entitled to dower in all lands of which the husband died *seized and possessed.*

4th. That she cannot be dispossessed of the mansion house.

5th. That by the Act of 1842, as a sheriff's sale made during the life of the husband barred dower in the lands sold, as effectually as if the land had been sold by the husband, this furnishes a *clear intimation,* that if the sale be *not made in the life of the husband,* her right to dower is not barred.

6th. That no lien created by the husband, though assented to by the wife, shall interfere with her right to dower.

7th. That as by paragraph of the Code 1761, the widow's right to the proceeds of the sale of the land, when she elects money, rather than assignment of her third of the land as dower, is *in preference to all claims whatever,* on the money so elected, the paramount right of the widow to an assignment of dower in all cases, free from incumbrances and liens, is distinctly established.

I concede, at once, that the right of a widow to dower in the lands of which the husband died seized and possessed is beyond all dispute, and that her right thereto is not *barred* by anything but by her adultery, or elopement with an adulterer, or by a jointure made before or upon marriage, in *lieu* of all claims to dower, should she survive the husband.

I do not contest the abstract right of a widow to dower. I deny the proposition my associates have affirmed by their judgment, that the widow's right to an actual assignment of dower is paramount to all liens on, and incumbrances existing over, the land when the husband died, and that she is entitled to her third, *unaffected by them.*

The position I occupy is entirely consistent with the fullest recognition of a right to dower.

I have enumerated the Statutes of Georgia which my associates have relied on to sustain their judgment—they have collected, with assiduity, everything which they thought would help to thicken the proofs they have adduced, and which " do demonstrate thereby."

Separately considered or in mass, I can but think that they furnish no proof whatever of the correctness of the judgment they have made—a judgment which stands on no correct principle, and is indefensible by any argument, as it shocks, by its injustice and absurdity, the reason of every well organized mind.

The proposition asserted can be defended only in those States where, in advance of the acquisition of landed property by the husband, the laws have so enacted, thus enabling creditors, and all others contracting with husband, to know what they will have to encounter upon his death. Such laws, it is understood, exist in North Carolina, Indiana, and, perhaps, Arkansas; and the decisions in these States are in conformity to their laws. But in *Georgia, no such law exists* as these, declaring the right of widow to an actual assignment of dower as *paramount to debts and incumbrances.* I propose to make a running comment on the several statutes referred to; as also the case in 10*th Georgia*, 435.

Whatever may be the provisions of *magna charta* as to

Clements *vs.* Bostwick, and Morrow, adm'r.

dower, and the opinions of Lord Bacon and Lord Coke as to its favoring it, we can derive no aid whatever from any of them in the elucidation of the question discussed. Estimated at their full value, when pressed into a more than doubtful service, they can be useful only as rubble to crowd between thin walls to give to the structure the *appearance* of solidity. I pass the reference to them without other remark than that they furnish a far better theme for a school-boy's declamation, than a place in the opinion of grave judges, interpreting statute laws made long since they were uttered.

The clause in the Statute of 1768 cannot have the slightest influence on the point discussed. As, at that time, it was necessary in cases of *alienation of land* by the husband, that the wife should join with him in order to bar dower therein, so the Legislature, as it had been a matter of doubt, enacted that in cases of mortgages by the husband, the wife should not be barred of dower in the lands so mortgaged, except upon a release or relinquishment by her, as in the case of absolute conveyance by the husband. But the Act of 1826 changed these provisions, by restricting the right to dower to such lands as the wife brought into the marriage relation, and the lands of which her husband died seized and possessed.

It has been said that the Act of 1842, (pamphlet 75,) amending the Act of 1826, declaring conveyances made by sheriff during the life of the husband, in pursuance of sales by him under execution, should bar the right of widow to dower in lands so sold, furnishes a clear intimation that if the sale was not made by a sheriff during the life of the husband, the right of the widow to dower is not barred.

Grant that the right to dower exists in the unsold lands of which the husband died seized and possessed, the question recurs, does not that right exist subordinate to the liens and incumbrances which fettered the property in the hands of the husband. The opinion, of my associates is, then, not aided by the Statute of 1842.

This enactment was wholly unnecessary, for, from the Act of 1826, it would have followed as a direct consequence that the widow could not have dower in lands sold by the sheriff

Clements *vs.* Bostwick, and Morrow, adm'r.

of which the husband had been legally disseized and dispossessed. I comment on it only because the attempt is made to give it a strained and illegitimate significance. I take it to be undeniable, that no right to dower in lands sold by the husband during coverture, or in lands sold under the judgment or decree of a court, during the life of the husband, exists in the widow; that in the land of the husband, bound by judgments obtained in his lifetime, but not enforced by execution, in mortgaged lands, and in lands unpaid for, and subject to vendor's equity, *the widow has a right to dower*, but it is a right subject to the qualification that she takes her dower affected by all the liens and incumbrances by which the lands were affected at the death of her husband.

The 1759th paragraph of the Code declares that no lien created by the husband, though assented to by the wife, shall in any manner interfere with her right to dower. The lien not being a sale or alienation of the land absolutely, the husband dying seized and possessed, the right of the widow to dower in it is not questioned, but in this, as in reference to judgment liens, where the right to dower also exists after the death of the husband, such right is subordinate to such liens, and she takes her dower subject to them. The plain meaning of this paragraph is, that although she assent during coverture to liens created by the husband on his lands, yet, should he die seized and possessed of the lands on which he had created liens, the widow should not be deprived of her right to dower in such lands, although she assented to such liens at the time.

But the main argument upon which my associates have relied, they have endeavored to derive from paragraph 1761 of the Code, which allows a widow, entitled to dower, to elect from the proceeds of the land of her deceased husband, the executor or administrator assenting to such election, and the ordinary approving it, an amount of money out of such proceeds which the commissioners appointed to assign her dower may estimate as its equivalent, which amount shall be paid to her *in preference to all claims whatever*.

Would it not have been extremely strange and unjust to

Clements *vs.* Bostwick, and Morrow, adm'r.

have allowed that amount of money, the equivalent and purchase money of her dower in the land sold unincumbered by her right to an assignment of dower in it, to have been taken away from her? Her right to dower had been established. It was unaffected by incumbrances. The assent of executor or administrator, and the approval of ordinary, demonstrates that they had protected the rights of creditors and other heirs. In such case, why should it not be paid to her, in preference to all claims whatever. It was her money, or rather her dower, in the form of money. And from this paragraph, directing the money allowed as equivalent for the dower she surrendered to be paid to her in preference to all claims upon it, my associates say that *her right to dower, in all cases, is paramount to all debts, liens and incumbrances whatever.* This is *stretching* a principle very far. It can be justified only on the same ground on which Steele defended Dryden. Dryden had prostituted his muse so far as to compare the notorious Dutchess of Cleveland to Cato. The wit vindicated the poet by saying *that there was no stretching a metaphor too far when a lady was in the case.*

There seems to run throughout the decisions of the majority the idea that dower was a lien, or debt, or exemption, or homestead, and that upon the death of the husband, it was to be enforced by the courts, without regard to incumbrances or debts hanging over the estate of the husband. I can but think that, if the character of dower had been kept distinctly in view, it would have been impossible, logically, to have reached the conclusions which have been announced as law. Dower is simply an *estate-for-life* in lands of which the husband died seized and possessed. It is nothing else. In every respect it is like the life-estates, subject to the same incidents, and has no feature appertaining to it so as to treat it as a lien, or debt, or exemption, or homestead. It is an estate-for-life, created by positive law, for the benefit of the wife, and is made independent of the *will* of the husband, and is incapable of being defeated by *him*, should he die seized and possessed of lands.

A right to dower can only be *barred* by her misconduct

whilst a wife, as by her adultery, or by a suitable provision for her by jointure, and then only with her assent that such jointure should be in lieu of all right to dower. The right to dower exists in all cases where the husband dies seized and possessed of lands, whether solvent or insolvent; but as it is an estate-for-life, carved out of the fee simple of which he died seized and possessed, like the fee simple, it, of necessity, must be subject to the same incumbrances and liens which have attached to and bound the greater estate. A law of nature forbids a stream to rise higher than its fountain head, a law of nature also, that of common sense, revolts at the idea that the widow does get a better title as heir than that held by the husband in the same lands.

I take it that no principle of law is more generally assented to in our American system of jurisprudence, and with an acquiescence which indicates that such assent springs from an instructive sense of undoubted justice and right, than that *all the property* of a decedent is first liable to the payment of his debts before any distribution can be made among his heirs. Subject to a few exceptions arising from humanity and supposed public policy, the principle stated controls and governs all property. The exceptions by positive law, in this State, include the *paraphernalia* of the wife and children's clothing, furniture, food, so many acres of land, according to the number of minor children, the widow's quarantine in the mansion house of deceased husband, and now, by a recent Act, a large amount of real and personal property is set apart as a homestead, not to be subject to judgments obtained or debts contracted after such enactment. Of these laws a remark only will be made. No creditor can complain of such exemptions from liability to pay debts, if the credit was given after the exemptions were made. The proposition, then, which I maintain is, that all of the *remainder* of the property of a decedent is subject to the payment of the incumbrances and liens hanging over or binding it and the debts, generally, of the husband. These debts and liens are to be paid, in an order prescribed by law, for the guidance of executors and administrators.

Clements *vs.* Bostwick, and Morrow, adm'r.

The oath of office which the representatives of estates take before entering on administration, requires *the payment of debts* in the order prescribed, before making any division of the estate among the heirs. This oath is a demonstration of the general principle asserted of the liability of all property to pay debts, *unless exempted.*

How comes it, then, that as dower, as has been already shown, is not an *exemption* or a homestead, or that it is not within any class not subject to levy, (and it certainly has not been enumerated,) and is neither a lien on the estate or a debt due by it, but is *an estate-for-life* in lands—a part of the lands which belonged to the husband at his death, and a continuation of his estate after his death—affected, as it was in his hands, by incumbrances, liens, debts, that such *an estate* shall not be liable to pay his debts, and to those liens and incumbrances, as well as the fee simple estate out of which it was carved? Dower can have no existence whilst the husband lives. The widow is made by law an heir to her dead husband, her *right* to the share the law has given her begins with his death. The law says she shall have a right to dower in one-third of the husband's lands. By this, she acquires precisely the same amount and quality of title to the one-third of the lands which she inherits from the husband, that the husband had in the whole, no more. If no more, and the title of the husband was, in any wise, incumbered, hers must also be. It is, says Kent, a general rule that dower can only be *commensurate* with the estate of the husband.

This rule involves, of necessity, the qualification that if the estate in land, held by the husband, is on condition or incumbered, the right to dower in such estate not being denied, when the dower is assigned, the doweress takes her third, subject to those conditions and incumbrances. And whilst such terms are imposed, equity will assist her in removing all impediments to the enjoyment of her estate. She must do equity. She will be required, by an apportionment, to remove such incumbrances to the extent of the value of her estate, if so much shall be necessary as her fair share.

In 4th Kent's Com., p. 50, it is stated, as a general principle, that dower is liable to be defeated by every subsisting claim or incumbrances in law or equity, existing at the inception of the husband's title.

If, then, the seizin of the husband is thus effected by claims and incumbrances, and dower be but a continuation of the estate of the husband, it is beyond my capacity to comprehend how the doweress can take any other estate in the lands of the husband than he had at his death.

The principle stated by Kent is constantly enforced in courts of equity. Thus, when life-estates are considered, there, and are charged with an incumbrance, the tenant-for-life is required to keep down the interest out of the rents and profits of his estate, where the security is payable at a distant day. In such case, the tenant-for-life is not *bound* to extinguish the whole security by payment; but he must remove the incumbrance in order to enjoy his life-estate, though he will be reimbursed the principal of the incumbrance paid by him out of the heir or remainder-man.

Dower being a life-estate, upon what principle is it to be exempt from the incidents that attach to the class of estates to which it belongs? The case in the record has arisen upon a bill filed by the vendor of land to a deceased husband, to prevent an assignment of dower to the widow until the purchase money is paid, or the wife does equity by removing the lien as to that portion of land which is assigned her as dower.

We must not forget we are in a court of equity. In such court, the strict legal right to dower, which a court of law might probably sanction, is always held subordinate to the implied lien of the vendor. That this is so, is evident from the fact that the vendee is treated as the trustee of the land for the vendor, until the purchase money is paid, and as the widow is no *bona fide* purchaser without notice, but claims through vendee, as heir, to the extent of the title she derives from her husband, she, by succession, is made a trustee for the vendor. This lien is, strictly speaking, simply an equity. But it is undeniably an incumbrance. Its origin is in a deep sense of natural justice and the presumed agreement of the par-

Clements vs? Bostwick, and Morrow, adm'r.

ties to the contract. Hence a court of. equity, revolting at the injustice of a purchaser enjoying fully property without the payment of a consideration, imposes terms on him and those claiming by inheritance from him, and this constitutes what is called the vendor's lien. So, too, acting upon similar principles, it will not regard the actual seizin and possession of the husband, as in trust-estates in land held by the husband. Upon strict Common Law rules, the widow would be entitled to dower; but as the husband had no beneficial ownership in the lands held in trust, a court of equity denies her claim to dower. In cases of mortgages made of land by her husband, where condition is broken, she will be restricted, after his death, to dower only in the equity of redemption.

I again broadly admit that the widow has a right to dower in all lands of which the husband died seized and possessed; but the question is not as to the abstract right, but whether she has a right to an actual assignment of dower, and to be put in possession of the lands, unaffected by the liens, or incumbrances over the lands, whilst they were her husband's; or, in other words, whether her estate is paramount to liens, incumbrances and debts?

Let us test this. The husband, A, purchases the land in which the widow claims dower of B, against whom C held at the time an unsatisfied judgment for an amount larger than the value of the land. B dies insolvent. I take it, no one can doubt that the land in A's possession was liable to pay the judgment held against B. But A dies without that judgment having been enforced against the land he purchased of B. C causes his execution to be levied on the land after A's death. The widow clearly has a right to dower in this land, but is she entitled to an assignment of one-third as her dower, to the prejudice of the execution creditor, in selling the whole land to satisfy his judgment? Certainly not. For, as A bought the land bound by the judgment in favor of C, the death of A does not defeat the lien of the judgment, but simply, in the distribution of the assets amongst creditors, postpones the lien until funeral expenses are paid, as also taxes, expenses of administration and debts due by A, as trustee.

*There is no postponement of the judgment creditor to the claim of dower. The law has not so said.* Her right to dower exists, subject to the incumbrance of the judgment lien.

Is it not absurd to hold, in the case put, that A's widow had a right to an actual assignment of one-third of the land, and to an absolute and unmolested enjoyment of it during her life, and that C, the creditor of B, must suspend the levy of his execution on the third of the land *until the* widow of A should die? That is to say, indefinitely, as the *vitality* of a widow defies the powers of arithmetic.

Such is a result which must ensue if the position of my associates be not abandoned. If it be true that the widow is entitled to an actual assignment of dower, unaffected by any lien or incumbrances, how does it happen that, although the husband holds by an absolute deed on its face, and has possession of the land, yet, because he gave simultaneously a mortgage on the land to secure the payment of the purchase money, that his widow is not entitled to dower, unaffected by the mortgage, in the land? Upon the reasoning of my associates she would clearly be entitled to such assignment. I say, too, she has a right to an assignment of dower in the land, subject to the incumbrance of the mortgage. My associates, seeing the monstrous injustice of allowing her dower until the mortgage was satisfied, are constrained to hold with me. Consistency required them to hold otherwise. In thus holding, they are maintaining a position that is right, and if it is right in the case put, why should it not be held in all cases where there are incumbrances or liens? But the vendor's lien being an *equitable* mortgage on the land, to secure the unpaid purchase money, on what principle is it that a distinction is made between it and a *legal* mortgage? If the legal mortgage is an incumbrance to the full enjoyment of dower, so, too, must be the equitable mortgage.

The inconsistences characterizing the opinions of my associates as to the right of widow to an actual assignment of dower, have arisen from construing the terms "seized and possessed" *strictly,* without reference to their modification by equity.

It cannot but excite inquiry why the words seized and possessed are used in the Act of 1826. That they are not synonymous, is inferrable from their being used conjunctively. Seizin has reference to an unconditional, unincumbered title in the husband, and thus interpreted, all difficulty can be avoided as to the assignment of dower.

With this interpretation of its meaning, the distribution of the property of a decedent becomes simple, and the representative of the estate can move on in the administration of the estate without embarrassment, by first paying the debts in the order prescribed by law, and *then* making partition amongst the heirs of the land remaining *after* having had the widow's dower assigned. I repeat it, dower is *an estate-for-life*, in lands of which the husband died *seized and* possessed. The *power* of the husband to dispose of his lands by will to whomsoever he pleased, was limited by the Legislature in this only. A right in the widow to dower, was *conferred* by the Legislature, because it saw how very often it had happened that when the bloom of youth had faded, the wife ceased to have any hold on the affections or justice of the husband, that she was often thrown penniless on the world. Not so, however, did he treat his children. It trusted, as to them, to that deep-seated paternal feeling which exists, in full strength, in every uncorrupted heart, satisfied that provision would be made by the father for them if they had deserved it, and hence, it wisely declined to interfere with him in the disposition of his property amongst them. Not so, however, as to the wife. Satiety had produced indifference to her in the husband, or age had caused alienation of his regard, and it stepped in to protect her against such changes in the fickle affections of one to whose memory of the past it was unsafe to trust, and declared *the right of the widow to dower.* The law made the widow *an heir* to the husband, and fixed the *quantity* she *should inherit* in the land.

It put the widow on the footing of heirship with the children, and this is confirmed by law in that enactment which

allows her to elect dower, (the life-estate,) or a child's *part absolutely*.

Should she elect a child's part, and all the land was necessary to pay the debts of the estate, would not her share have to bear the loss as well as the shares of the children? What reason, then, in the name of common sense, exists to exempt her estate of dower—an estate in the same lands—from liability to pay the debts? I think it must be evident, from bestowing attention upon the *order* of payment of the debts of a decedent, that the Legislature never for a moment regarded dower as a *lien*, or that, from its nature—it being simply an estate-for-life in land—it was entitled to any *place whatever* in the scale of priorities thus prescribed. Regarding the right to dower as a right to an estate-for-life in lands of which the husband died seized and possessed, a fixed and certain estate, if, after removal of incumbrances and liens, and payment of debts, any land was left out of which it could be assigned, it could have no place among the debts, and is therefore not mentioned. If the decision of the majority, that the widow has a right to an actual assignment and enjoyment of the estate of dower, paramount to all incumbrances, liens, and debts, be correct, an inevitable result from this will be that it takes precedence of the payment of funeral expenses, expenses of administration, taxes and debts due the public, and debts due by decedent as executor, administrator, guardian or trustee. My associates are driven by an inexorable logic to place dower above these; but they shrink from legitimate conclusions, and place it *after them* in the order of payment, and *before* mortgages, judgments, etc. This was done by my associates in the *Devereaux* case, where they subordinated the lien of a judgment to the right to dower unaffected by that judgment. That extraordinary decision carved out a niche between numbers four and five, in the order of debts to be paid, into which they have put dower, as being entitled, by its consanguinity. If, indeed, our laws had said that the right to an assignment of dower should be unaffected by judgments or liens, and only subordinate to the classes of debts enumerated before judgments, then my associates would

Clements *vs.* Bostwick, and Morrow, adm'r.

have been right in the selection of the place into which to put dower—not as a debt, but as an *estate*, not liable to payment of some debts.

It occurs to me that if, by law, my associates had the right to place in the order in which debts are to be paid, the *estate* of dower—as they have done—they had an equal 'right to place it at the head, and make the right of sepulture give way to it, *and leave* the dead husband uncoffined and unburied. Our statutes are entirely silent. They give no precedence to dower *over debts of any description, much less over incumbrances and liens on the land itself.* They have treated dower as property, out of which it might be necessary to pay the debts of decedent; but if not, then they gave *that estate* to be enjoyed by the widow, *before* the child or heir. *This is all that the law did.* The majority here, have *altered* this, by judicial construction, and, in my opinion, marred the symmetry of our system, and produced anomalies which reason can neither explain nor defend.·

I conclude by saying that, for many years, I have witnessed, with uneasiness, the quixotism which the Bench displays whenever a woman is a party, or a woman's claims are involved. I fear that it is an INCURABLE *insanity,* as thus far it has exhibited no obedience to law, and is deaf to reason, and *even insensible to ridicule.*

I record my dissent to the two judgments of my associates; the one made at December Term, 1867, the other at June Term, 1868, in the hope that the views which I have presented may weaken, if not destroy, their force as *authorities* hereafter, in the decision of other cases.