## Hill *vs.* Hill *et al.**

1. A testator bequeathed to his son a distributive share of his estate, including a portion of a plantation at a fixed price. The son was insolvent, and a large amount was in judgment against him. Soon after the will was executed, the son entered into a contract with his own son, in which the latter bound himself, in consideration that his father consented for him to become the legatee instead of his father under the will of his grandfather, and that he be allowed to retain $10,000 of the legacy, to apply the balance thereof in whatever manner his father might dictate. Three days later, his grandfather, the testator, by a codicil, annulled the former bequest and devised to him the portion intended for his father, he to stand in his father's place. After the testator's death, the father and son entered into another agreement to carry out the provisions of the first, reciting that the agreement was made for their mutual benefit, and providing that the son should take out certain stocks and bonds about equivalent to the amount named in the first contract, and requiring the son to transfer all the balance of his interest in the estate of his grandfather to his uncle, to be held by him for the use and benefit of his father, with the condition that the son granted his father the right to manage, control and dispose of the plantation referred to as to him might seem proper. The agreement further provided that, in case of .the death of the father without marriage and further issue, the whole of the property held by the uncle for the use of the father, should be conveyed to the son. The father afterwards died without further issue; but previously the plantation, together with the balance of the personal assets acquired under the will, were conveyed to the uncle according to the agreement, with full knowledge of the father:

*Held,* that the father exhausted all the power he had to direct what

. *BLECKLEY, C. J., being disqualified, Judge BOYNTON, of the Flint circuit, was appointed to preside in his stead.

disposition should be made of the plantation when he signed the last agreement: He acquired no legal tital to any of the property bequeathed, but the title was taken by the son; and the rights the father acquired in the legacy were such as were given him in the first contract signed by the son, and having died without further issue, the son is entitled to have conveyed to him all the property held by his uncle for the use of his father, whose widow acquired no right or title thereto.

(a) The exercise of the right which the father had to direct how the balance of the legacy should be applied, and in contracting for such purpose by the second agreement, was not such a fraud on his creditors as would prevent the enforcement of the contract as between the parties.

2. To entitle the widow to dower, the husband must be seized and possessed of the land in his own right; simple possession does not so entitle her. Expenses of administration must be paid out of the estate of the deceased.

(a) A demurrer to a prayer in the widow's cross-bill that the property in controversy be sold to pay a *fi. fa.* against her deceased husband, which she alleged was transferred to her since this litigation commenced, was properly sustained.

February 20, 1889.

Wills. Legacies. Contracts. Debtor and creditor. Title. Dower. Year's support. Before Judge JENKINS. Oglethorpe superior court. April term, 1888.

Reported in the decision.

H. McWHORTER, W. M. HOWARD, J. C. REED and HOPKINS & GLENN, for plaintiff in error.

HENRY JACKSON, B. S. IRVIN and J. T. OLIVE, *contra.*

BOYNTON, Judge.

This case was before this court at the October term, 1887. 79 *Ga.* 367. The controlling points in the case were then fully decided. We held in that decision, that the rights of the parties depended on the construction of the will of L. M. Hill, and the two contracts between B. P. Hill and his son, L. Harry Hill.

1. L. M. Hill made a will, in which he bequeathed to his son, B. P. Hill, a distributive share of his estate, in which was included a designated portion of the Taylor plantation at a fixed price, and required him to account for advancements. At this time, B. P. Hill was insolvent, and a large amount was in judgment against him; and on the 14th of March, 1882, very soon after this will had been executed, L. Harry Hill entered into a contract with his father, in which he bound himself, in consideration that his father consented for him to become the legatee under the will of L. M. Hill instead of his father, and he should be allowed to retain ten thousand dollars of the legacy, he would turn over and apply the balance of the legacy in whatever manner B. P. Hill might dictate. On the 17th of March, 1882, L. M. Hill, by a codicil to his will, annulled the bequest to B. P. Hill and devised the portion of his estate intended for him to L. Harry Hill, who was to stand in his place and account for advancements made to B. P. Hill or himself. L. M. Hill had a right to make this change in his will. Concede that he made the change with a knowledge of that contract and for the purpose of providing an independent support for his insolvent son, was there any legal restraint on him to prevent such an arrangement? While he lived, the creditors of B. P. Hill had acquired no rights over his property, so as to prevent him from making such a will as he chose. His bequest to L. Harry Hill was unconditional and unqualified, and without exacting from L. Harry any promise to dispose of any part of the legacy in any particular way; and the effect was to put the legal title in L. Harry Hill to do with it as he pleased. If B. P. Hill had any right to enjoy any part of the legacy, it was not acquired under the will, and if his son was under any obligation to him, it was not imposed by the will. When L. M.

Hill died, in October, 1883, the title to the share of his estate bequeathed to L. Harry Hill vested in him, and he was bound, after taking out ten thousand dollars, to turn over and apply the balance as B. P. Hill might direct, and B. P. Hill had the right to direct what disposition should be made of the balance of the legacy. This right was not limited either as to the manner of applying or the person who should be the beneficiary. This was the *status* of the parties when L. M. Hill died. And soon thereafter, on November 17th, 1883, another agreement was entered into by the parties, in which they undertook to define what interest and rights each had in the legacy. It is reasonable to infer that this agreement was entered into in order to consummate the understanding had between them when the contract of March the 14th, 1882, was entered into. Whether their plans were. then fully matured or not, it is certain that the second contract was made to carry out the provisions of the first. For, after reciting that the agreement is made for their mutual benefit, it provides that L. Harry shall take out certain named stocks and bonds, about equivalent to the amount named in the first contract, and then undertakes to designate how the balance should be applied. For the next paragraph of this agreement directs and requires L. Harry to transfer all the balance of his interest in the estate of L. M. Hill, deceased, to D. C. Hill, to be by him held for the use and benefit of B. P. Hill. There can be no controversy about the Taylor plantation being a part of the balance which L. Harry had under the will. Then it follows that the Taylor plantation was to be transferred to D. C. Hill; it was so understood by the contracting parties. And in accordance with this agreement, the Taylor plantation, together with the balance of the personal assets acquired under the will, were, by the deed dated January 16th,

1884, conveyed to D. C. Hill. The agreement provides that the transfer is to be made with the " following conditions : L. Harry Hill grants to B. P. Hill the right to manage, control and dispose of the Taylor plantation in any way that to him may seem best and proper." The learned counsel for the plaintiff in error insists that this provision of the contract gave B. P. Hill the fee in the Taylor plantation, with full power to dispose of the same as he pleased, and that it passed, under his will, to his wife.

Is there anything in the agreement which limits and controls this full power of disposition as claimed? We think this question is clearly answered in the affirmative by the stipulation found in the third paragraph of this agreement, to wit : "In case of death of B. P. Hill without marriage and further issue, the whole of the property held by D. C. Hill for the use of B. P. Hill, is to be conveyed to L. Harry Hill." The agreement required the transfer of the Taylor plantation to D. C. Hill; it was so transferred with the full knowledge of B. P. Hill, as appears from the record, and at the time of his death it was a part of the property held by D. C. Hill. And B. P. Hill having died without "further issue," the only conclusion which can be arrived at by a proper construction of these contracts is, that B. P. Hill exhausted all the power he had to direct what disposition should be made of the plantation; his power of appointment was terminated when he signed the last agreement, unless it was done at the consent of his son; he had no other children.

B. P. Hill acquired no legal title to any of the property bequeathed by his father to L. Harry. The rights he acquired in the legacy were such as were given him under the first contract signed by his son. That was, the right to dictate how a part of the legacy should be

applied.    When he came to exercise this right, he stip-
ulated that he should have the use and control of the
Taylor plantation and the income of the personal assets
during his life, and if he died without "further issue,"
all of the legacy should be conveyed to L. Harry.    And
L. Harry contracted, that, if he died without marriage
and issue, he would convey to D. C. Hill all his prop-
erty, subject to the order of his father, unconditionally.
The scheme was that the survivor should have all the
property acquired by the legacy, unless there were chil-
dren.    No provision was made for the widow who might
survive either.    These contracts define the rights of
the contracting parties, and they are founded on consider-
ations, as therein specified, sufficient to make them bind-
ing on both.    And we hold that the exercise of the right
which B. P. Hill had, to direct how the balance of the leg-
acy should be applied, and in contracting how it should
be applied in the second agreement, was not such a fraud
on creditors of B. P. Hill as would prevent the enforce-
ment of the contracts, as herein interpreted, as between
the contracting parties, their heirs, executors and de-
visees.    And B. P. Hill having died without further
issue, L. Harry Hill is entitled to have conveyed to him
all the property held by D. C. Hill for the use of B. P.
Hill under the second agreement.    And D. C. Hill is
entitled to recover the same for that purpose.    And
from this it follows that Bessie May Hill acquired no
right or title to any of the property held by D. C. Hill
for use of B. P. Hill, under the will made by him in her
behalf.

2. Mrs. Bessie May Hill, by way of cross-bill, seeks to
recover dower, twelve months' support and expenses of
administration; and if she is not entitled to recover, she
prays that the court will decree that the property in
controversy be sold to pay the *fi. fa.* against B. P. Hill,

which she alleges has been transferred to her since this case was before this court before. We think the court did right in sustaining the demurrer to these parts of the cross-bill. The widow is entitled to a year's support only out of the property of her deceased husband. Expenses of an administration must be paid out of the estate of the deceased. Although her husband died in possession of the land whereon he lived at the time of his death, simple possession does not give right to dower. The husband must be seized in his own right to the land and be possessed of same, to entitle her to dower. And as we have decided that B. P. Hill was not the owner of the land at his death, the widow is not entitled to dower, nor to the right to further occupancy of the mansion-house or premises.

If the plaintiff in error is the transferee of the execution named in her cross-bill, she has a complete remedy at law. No special reason is given why equity should interfere in behalf of this execution, especially as she claims it was transferred to her since this litigation was commenced, and it is not germane to the litigation as it stood when she became the transferee.

We think the court did right in sustaining the demurrer to the cross-bill as set out in the order, and in rendering the decree which is complained of.

Since we affirm the judgment of the court below, there is no reason why we should pass on the motion to dismiss the bill of exceptions.

Judgment affirmed.