## HARRIS *et al.* v. POWERS *et al.,* and *vice versa.*

1. At common law a widow was not dowable of an equity of redemption.
2. The common law of force prior to May 14, 1776, was adopted as the law of this State by the act of February 25, 1784, except where modified by statutes or not adjusted to the conditions or system of government existing here.
3. Where an owner of land made a deed to secure an indebtedness, and took a bond for reconveyance upon payment of the debt, and died without having paid any part of the debt or having obtained a reconveyance, his widow was not entitled to take dower either in the land as a whole or in the equity of redemption; at least not without first redeeming the property.
4. Where the estate of the decedent was insolvent, and was placed in the hands of a receiver for administration by a court of equity, and the case was referred to an auditor for an accounting, creditors, whose claims would be affected by the allowance of dower, had a right to contest the widow's claim to have dower allowed to her in land to which the husband did not hold title at the time of his death, but only an equity of redemption.
5. The principles above announced were not changed by the fact that the receiver, under order of the court, sold the land which had been conveyed to secure the debts, paid off the indebtedness, and had a surplus on hand. Nor did it alter the case that creditors assented to the payment of the secured indebtedness (with an exception as to fees, touching which the question was reserved) in order to save accruing interest on the secured debts.

6. Where a promissory note was due five years from its date, with interest payable annually on a fixed day, but included a provision that, if the interest was not paid when due, the payee might declare the entire debt due; and where, after the failure to pay an instalment of interest, the attorneys for the creditor gave notice to the administrator of the deceased debtor of an intention to bring suit on the note to the next term of court, and on the return day of such term suit was brought by the creditor for the entire amount of the note, this was evidence of an election to declare the whole debt due for non-payment of the interest.

7. This would not be altered by the fact that the maker of the note had died and an administrator had been appointed, nor because the creditor did not bring a separate suit on the note, but joined with other creditors in an equitable petition, praying to have its right enforced, and also for the administration of the estate by a court of equity.

8. Where a provision for the payment of attorney's fees is included in a note, the death of the debtor insolvent will not destroy the right to recover such fees as against the administrator, upon compliance with the statute in respect to giving notice.

9. Where notice was duly given, in accordance with the act of 1900, to an administrator, of an intention to bring suit upon certain promissory notes made by the decedent, which contained a provision for the payment of attorney's fees; and where the estate was insolvent, and by reason of complications it was necessary to place the assets in the hands of a receiver, and to have an accounting as to assets and debts; and where, on the last day for bringing suit to the next term of the superior court (in this State called the return day), the creditors holding such notes, and others, filed an equitable petition under which a receiver was appointed and an administration of the assets of the estate had; and where the auditor, to whom the case was referred, found that the administrator had no money with which the notes might have been paid, and could not borrow it, and in effect that no payment could have been made, the holders of the notes were not prevented from recovering attorney's fees thereon because the suit was commenced on such return day.

Argued April 19,—Decided August 12, 1907.   Rehearing denied October 2, 1907.

Exceptions to auditor's report.    Before Judge Fite.    Bartow superior court.   August 4, 1906.

*John T. Norris* and *John W. & Paul F. Akin,* for plaintiffs in error in main bills of exceptions.

*Thomas W. Milner & Sons, T. C. Milner, J. M. Moon, G. H. Aubrey,* and *J. B. Conyers,* contra.

LUMPKIN, J.   This case arose upon an equitable petition under which an insolvent estate of a decedent was placed in the hands of a receiver upon the application of creditors.   It was referred to an auditor to take an accounting and make a report, with a view to

the proper administration of the assets under decree of the court. Among the creditors who filed the original petition were the holders of deeds made by the decedent in his lifetime to secure certain debts, bonds to reconvey upon payment having been made to him by the grantees in the deeds respectively. There were also unsecured creditors. The widow claimed dower. One of the secured creditors claimed attorney's fees under a provision in the note held by it. An unsecured creditor also claimed attorney's fees. The auditor refused to allow them, and exception was taken. Pending the case, under an interlocutory decree of the court, the receiver sold the lands, paid off the holders of the secured debts, and had in hand a surplus amounting to several thousand dollars. The auditor found that the widow was entitled to dower in the equity of redemption, or, in lieu of it, in the surplus of the proceeds of the lands after paying off the debts secured by the deeds. To this other creditors filed exception, contending that the widow was not dowable in such equity or surplus. The widow filed exceptions claiming that she was entitled to dower, not only in the surplus, but to be measured on the basis of the value of the entire lands. She sought to have set apart to her a sum of money in lieu of dower in the lands, alleging that this was by agreement under the statute. Civil Code, §4695. Motions and counter-motions were made to dismiss various exceptions, which were overruled. The presiding judge overruled all of the exceptions of law and fact, and entered a decree accordingly. All parties excepted, a main bill of exceptions, a cross-bill of exceptions, and two independent bills of exceptions being filed. With one of these we have dealt separately. *Pendley* v. *Powers,* ante, 69. The others we will consider together.

We deem it unnecessary to deal with the demurrers to exceptions and motions to dismiss them, or with exceptions to an allowance of an amendment to one set of exceptions, further than to say that we think there is enough properly before us to raise the questions above indicated, and we will deal with them accordingly.

It has been said that dower was introduced into Denmark by Swein, the father of Canute, out of gratitude to the Danish ladies, who sold all their jewels to ransom him when taken prisoner by the Vandals; and that possibly the English dower was a relic of the Danish custom, though the reason given for its adoption in'

England was the more practical one of making provision for the sustenance of the wife, and the rearing and education of the younger children. 2 Bl. Com. 129. If, indeed, dower had an origin so tinged with grateful gallantry, and having for its purpose the rewarding of the generous ladies of Denmark by conferring upon them a right in respect of their husband's lands, with or without the consent of the husbands, it is not surprising that, when it became a part of the law of England, it should have been often declared to be a favored right, especially by the courts of equity, which delighted in being called "courts of conscience." The effort to harmonize the holding of the courts of law that dower was a legal right, that seizin, which was necessary to the perfection of a freehold, was necessary to dower, and that a widow could only take dower in a legal estate, with general ideas of moral duty on the part of her husband to support his wife and children, and with broad, equitable views, gave rise to a series of decisions which are not easily to be reconciled on a basis of sound and consistent principle. An excellent discussion of this subject will be found in Park on Dower, 124-140 (contained in Law Lib. vol. 11, pp. 56, 64) ; D'Arcy v. Blake, 2 Sch. & Lefr. 388. Whatever real or apparent differences, however, there may have been among some of the decisions, the rule of the common law was ultimately determined to be that a widow could not take dower in an equity of redemption. In Dixon v. Saville, 1 Bro. C. C. p. *326, decided by the Lords Commissioners of the Great Seal in 1783, it was held that "A widow is not dowable of an equity of redemption." Lord Loughborough treated the rule as so well settled, that, after considering the arguments which discussed numerous cases, he dismissed the entire matter in the following brief opinion: "The argument in the cases cited has generally sprung from compassion. The case of an estate by the courtesy in a trust, is the anomalous case, not the rule that the wife shall not have dower. I confess I think it so much settled. that it would be wrong to discuss it much." Mr. Park says, "This has been since recognized to be the law by universal practice, and by several of the most learned judges." Park on Dower, 137 (Law Lib. vol. XI, top p. 63). As early as 1712, in the case of Bottomley v. Fairfax, Prec. Ch. 336, it was said that "In this case it was clearly agreed, that if a husband before marriage conveys his es-

tate to trustees and their heirs, in such manner as to put the legal estate out of him, tho' the trust be limited to him and his heirs, that of this trust estate the wife after his death shall not be endowed, and that this court hath never yet gone so far as to allow her dower in such case." That the common-law rule prior to the dower act of 3 and 4 Wm. IV, c. 105, was that the wife was not entitled to dower in an equity of redemption, see also Dawson v. Bank of Whitehaven, L. R. 6 Ch. Div. 218; Mayburry v. Brien, 15 Pet. 20; Steele v. Carroll, 12 Pet. 201; 11 Am. & Eng. Enc. Law (2d ed.), 210; 4 Kent's Com. 43 et seq.; Bispham's Eq. (5th ed.) 616. In 14 Cyc. 909, the rule is thus succinctly stated: "At common law seizin of a legal estate is an essential requisite to the right of dower, and therefore the widow is not entitled to dower in lands to which her husband had only an equitable title." On page 914 it is said: "The right of redemption from mortgages being regarded as a mere equitable title, the common law did not recognize dower right of a widow in her husband's equity of redemption." In 10 Am. & Eng. Enc. Law (2d ed.), 162, it is said: "The familiar rule of equity that all the incidents of legal estates shall attach and apply to equitable estates did not, at common law, include the right of dower. This exception, it is said, was contrary to all the analogies of legal and equitable estates, and, if it were now open to question, would be no longer recognized. It has been changed in England, Canada, and most of the United States." The revolt against the common-law rule was greatly forwarded, if not led, by the distinguished Chancellor Kent, as early as 1804, in the case of Waters v. Stewart, 1 Caines' C. side pp. 47, 68. He discussed at length the position of the holder of an equity of redemption in possession of the debtor, and held that under the New York statute it could be seized and sold under an execution. This was followed in 1821, by Titus v. Neilson, 5 Johns. Ch. 452, holding that the widow was entitled to dower in the land, subject to the mortgage, and that the court would allow her dower out of the surplus proceeds of the sale of the mortgaged premises on a bill for a foreclosure and sale. In that case, however, it was still recognized that, "In England, dower is considered as a mere legal right, and equity follows the law and will not create the right where it does not subsist at law." See also Hitchcock v. Harrington, 6 Johns. Ch. 290. For

a full development of this theory see the authorities above cited, and also 1 Jones on Mortgages (8th ed.), §664, p. 658 et seq.

Whatever may be the justice or injustice of the English rule as to dower in an equity of redemption, or what is analogous to it under our system, it was enacted by the legislature of this State, on February 25, 1784, that the common law of England of force prior to May 14, 1776, should be of force in· this State. Cobb's Digest, 721.; Pol. Code, §1, par. 3; Prince's Digest, 570. Thus then, so far as the common-law rule is applicable· to the present situation, it must remain of force until changed by legislation. Under the common law, dower attached to all of the lands and tenements of which the husband was seized in fee simple or fee tail at any time during the coverture, and of which any issue which the wife might have had might by possibility have been heir. Under the law of this State, "dower is the right of a wife to an estate for life in one third of the lands, according to valuation, including the dwelling house (which is not to be valued unless in a town or city), of which the husband was seized and possessed at the time of his death, or to which the· husband obtained title in right of his wife." Civil Code, §4687. As a husband's marital rights no longer attach to his wife's property, the last clause of this definition can have no application except to cases arising prior to what is known as "the married woman's law of 1866," and may be disregarded in the present consideration. The change authorizing the husband to convey his property free from the right of dower on the part of his wife, and without relinquishment from her except as to property which he received through her, dates back to 1826. Cobb's Digest, 171. But it will be noticed that to entitle a widow to dower the husband must have died seized and possessed. Except as modified by statute, and with a possible exception in 10 *Ga.* infra, the word "seized" has always been treated as referring to a legal title, or certainly a perfect equity, equivalent thereto, relatively to applications for dower.

In *Chapman* v. *Schroeder,* 10 *Ga.* 321, dower was recognized as a legal claim. It was indeed there held that a widow was dowable of wild and uncultivated lands, whether in England she would have been so or not, owing to the situation and circumstances of our people, as well as and by· reason of implications from certain laws. In *Bowen* v. *Collins,* 15 *Ga.* 100, it was held that a pur-

chaser of land who held under a bond, for title, with part of the
purchase-money paid at the time of his death, was not seized and
possessed of the land within the meaning of the law. It was
said, that, whatever might be the meaning of the word "seizin,"
it included in it this ingredient: "A title which is complete."
See also *Clements* v. *Bostwick,* 38 *Ga.* 1; *Day* v. *Solomon,* 40 *Ga.*
32; *Kinnebrew* v. *McWhorter,* 61 *Ga.* 33; *Raley* v. *Ross,* 59 *Ga.*
862; *Hill* v. *Hill,* 81 *Ga.* 516 (2); *Pirkle* v. *Equitable Mortgage
Co.,* 99 *Ga.* 524 (the ruling that the clause inserted in the convey-
ance involved in that case made it a mortgage has since been re-
versed in *Pitts* v. *Maier,* 115 *Ga.* 281, 285); *Ferris* v. *Van Ingen,*
110 *Ga.* 102, 115.

In *Latham* v. *McLain,* 64 *Ga.* 320, it was held that where one
entered into the possession of land under a parol contract to pur-
chase, but paid no part of the purchase-money to the holder of
the legal title, he was not seized as against the latter and those
claiming under him; and on his death, even after he had tendered
the purchase-money, his widow was not dowable of the land. It
was there recognized that legal seizin might be obtained by paying
the purchase-money in full, where a bond for titles or other written
contract for sale and purchase had been entered into, or that title
might be acquired by deed or prescription. Bleckley, Justice,
said: "Mere tender of money does not operate as payment, nor
work a transmutation of title. The money which the complain-
ant's husband tendered to the railroad company remained his
money, and, if it was still on hand when he died, became assets
of his estate. And if he owned the money at the time of his
decease, he surely did not own the land also. The tender, together
with the other facts, put him in a situation where he might have
filed a bill for specific performance, and obliged the railroad com-
pany to invest him with title, but he did not pursue that course.
He took no steps to strip off the title with which the company was
clothed. The most that can be said is, that he died possessed of a
right to become seized of the land by the appropriate proceeding
in equity; and possibly, if the right were now actually enforced
by his executors, administrators, or heirs at law, so as to render
the land the property of the estate, fully and completely, the widow
might be dowable of it on the doctrine of relation." In *McDonald*
v. *McDonald,* 120 *Ga.* 403, it was held that where a husband bor-

rowed money, made an absolute deed under the provisions of the code to secure it, received a bond for titles from the lender, and at the time of his death had paid none of the notes given for the borrowed money, he had no interest in the land except the equity of redemption, and his widow was not entitled to dower therein. In that case the objection was made by the administrator, and it was held that he had a right to do so, although the holder of the security deed withdrew all objection on its part. In other cases the holder of the security deed was involved, but in the *McDonald* case it was not so; and therefore it is a direct adjudication controlling in the present case, if the creditors here had the right to make the objection. We have granted permission to review the case last cited, and have carefully considered the briefs and arguments of counsel. We can not, however, overrule it. What has been said above will show the reason on which it rests. It was contended that the act of 1884 (Acts 1884-85, p. 92), now codified in section 4688 of the Civil Code, changed the law, so as to allow dower to be assigned in an equity of redemption. That section reads as follows: "Dover may be assigned in lands held under deed, bond for titles, or other instrument in writing having like effect, where a portion of the purchase-money has been paid, but the estate in dower shall be liable for the unpaid purchase-money where the vendee held under bond for titles or other instrument having the same effect, or under deed where contemporaneously with the execution of the deed the vendee encumbered the land with a mortgage for the purchase-money." Apparently the act was passed to meet the ruling in *Bowen* v. *Collins,* 15 *Ga.* supra, and perhaps in part *Wilson* v. *Peeples,* 61 *Ga.* 218. It is limited to the cases mentioned in it. Whether the payment of a part of the debt secured by deed with bond to reconvey would be analogized to payment of part of the purchase-money is not now before us, as there was no such payment. Nor is the law which requires seizin as a basis for dower changed by section 4696 of the code, which allows the widow, with the assent of the executor or administrator, and the approval of the ordinary, to elect, in lieu of her dower, an amount in money to belong absolutely to her, to be estimated and determined by the commissioners appointed to assign dower, whose report shall be subject to the same objections as are admeasurements of dower in land. This simply authorized the

payment of a sum of money in lieu of the dower in the land, but did not create a right of dower where none existed before. If there was no right to dower in the land, there was no right to an equivalent sum of money in lieu of it. This is made clear by the closing part of the section, which declares that the amount so awarded shall be paid in preference to all other claims "out of the proceeds of the sale of the lands."

There are some differences between our statutory deed to secure a debt, with bond for titles to be made on repayment, and a mortgage under the common law. The deed to secure a debt is a statutory creation, and has given rise to some decisions which do not very closely follow analogies.

The deed conveys the title, but the grantee can not recover possession until after failure to pay. Even then, if he recovers possession, he has not a perfect, indefeasible title, but is liable to an accounting for rents, issues, and profits to be applied to the satisfaction of the debt, and after it has been discharged the grantor is again entitled to the land.' *Gunter* v. *Smith,* 113 *Ga.* 18; *Polhill* v. *Brown,* 84 *Ga:* 339. If the debtor remains in possession and the land is sold under execution against the grantee, the purchaser does not acquire a perfect title, but only the rights of the grantee. *Bridger* v. *Exchange Bank,* 126 *Ga.* 822. But to a considerable extent there is an analogy between our security deed and a common-law mortgage, and rulings in regard to the latter may be considered to furnish a guide as to the status of the former on the subject of dower. *Ashley* v. *Cook,* 109 *Ga.* 653, 657.

It is urged that the maker of the deed in possession should be treated, as to all the world except the grantee, as the owner of the property. This is to a large extent true. Thus, where such grantor brings an action of ejectment, the defendant can not set up the security deed, even after maturity of the debt, as an outstanding title to defeat the action, unless his possession is connected with such title. *Ashley* v. *Cook,* 109 *Ga.* supra. The statement is broadly made in *Wilkins* v. *Gibson,* 113 *Ga.* 31, 60, that, as against every one except the grantee in the security deed, the maker could set up that he was the owner of the property and entitled to all the rights as such, and that his vendees could do the same. In some respects the maker of the deed, though in possession, is not the absolute owner relatively to every one save the

grantee. Thus, the rule laid down in New York and other States, that the equity of redemption held by the grantor is subject to levy, has not been followed. On the contrary, it has been held not to be so subject. *Groves* v. *Williams*, 69 *Ga.* 614; *Shumate* v. *McLendon*, 120 *Ga.* 396.

Following the contention just above referred to, it was further insisted that the creditors could not assert the existence of the deed in order to defeat the widow's dower. They are not seeking to claim any right under the deed, nor do they occupy the position of a defendant in ejectment setting up an outstanding title. An insolvent estate of a decedent has been taken in charge by a court of equity for administration. If one claimant gets more than he or she is entitled to, another loses correspondingly. What these creditors are doing is to seek to prevent the estate, which is being administered through the court of equity, from being diminished by unlawful claims, which will cause them to lose all or a part of what is due to them. We know of no reason why this can not be done. Counsel for the widow argued that the administrator, by reason of the grant of an injunction and the fact that he had been appointed receiver, had been prevented from proceeding to handle the estate as administrator, and could not set up this defense against the claim of dower so as to protect the estate for creditors. If this is true, surely it can not be that the court will prevent the administrator from protecting the estate for creditors, and at the same time will refuse to allow the creditors to protect themselves. See *Pendley* v. *Powers* (decided to-day).

Another anomaly which has grown up in the law of dower is this: Under the English common law a widow being entitled to dower in all the land of which her husband was seized at any time during coverture in fee simple or fee tail, with a possibility of inheritance in her issue, this right was considered as a sort of claim or quasi encumbrance or interest in her favor attaching to all such land. It was even sometimes referred to as a species of inchoate estate in her. If the husband made a mortgage, and she did not release her dower, upon his death she was entitled to dower in the land without regard to the mortgage. If she did release her right of dower in favor of the mortgagee, it was nevertheless contended that this operated only as a waiver or estoppel in favor of the mortgagee or those succeeding to his rights, and that the

inchoate right still existed as against others. Out of this situation probably arose the adjudication of some of the courts that the widow was entitled to redeem the land, replacing the title in the estate of her husband, and then, by a species of relation, treating the land as having been in the seizin of her husband at his death. This redemption by the widow was, of course, with her own funds, not with the funds of others, or of the estate, which she had no right to control. It was said that if she thus redeemed, she might claim as a creditor for the redemption money in excess of her proper proportion. There are also rulings that if an heir or the administrator in the ordinary course of administration should redeem the land, she might claim dower, paying her proper proportion of the redemption money. In Georgia a mortgage conveys no title, but only creates a lien. Civil Code, §2723. The wife has no inchoate right or claim of dower in respect of the lands of which her husband was seized at any time during coverture, but only as to that which he was seized and possessed of at his death. His deed carries perfect title, without any joinder or waiver from her, except as to lands which he acquired through her prior to the married woman's act. Doubtless to prevent the great complications which arose from the old law, and in the interest of ready transmission of titles, and that they might bring full market value, unhampered by the danger of possible claims for dower at some uncertain future time, the legislature as early as 1826 declared that the husband might convey a free and unincumbered title to his lands without the wife joining him. Cobb's Digest, 171. Nevertheless, though the wife had no inchoate interest in the property conveyed by her husband, the privilege on her part to redeem land which had been conveyed by him to secure a debt, and then to claim dower in it, was recognized and seems to have become imbedded into our law, as will be seen by consulting the authorities above cited.

In the present case there was no redemption by the widow, none by the heir, and none by the administrator in the ordinary course of administration, if either of the latter would give a right of dower. The widow did not offer to pay any part of the redemption money; but merely desired to reduce the general estate which was insolvent, to increase her dower. At the instance of creditors the insolvent estate was taken in custody by a court of equitable juris-

diction. The holders of the security deeds were parties, and sought to have their rights as such enforced. A sale was made by the receiver under order of the court, and the security debts were paid off except as to attorney's fees, which will be dealt with hereinafter. Had the sale been made by regular suit, filing a deed, and levying the execution in a court of law, the payment by the sheriff of the amount due on the security debts would not have entitled the widow to dower in the surplus representing the equity of redemption. That there was a judicial sale under decree of a court of equity did not alter the case. Nor did the fact that the other creditors may have made no objection to the payment of the secured debts accomplish such a result. There is some language in the original petition which might indicate that the widow could set up a right of dower except as against the secured creditors; but other creditors evidently did not concur in this view. Exceptions were filed to the auditor's report, and the question is presented for the determination of this court as one of law.

From what has been said above it will be seen that the common-law rule touching dower in an equity of redemption was adopted in this State, whatever may be the rulings on that subject in other States; that the legislature has modified that rule only in certain cases; and that this is not one of them. It is our duty to adjudicate what is the law, not to amend it. If the legislature is of the opinion that dower should be allowed in cases like the present one, it is within their power to amend the law accordingly. Whether the law as it stands may work some hardship, or not, is not the question for the courts. They can not change the law to suit what may appear to be a hardship in any particular case. It may be mentioned, however, in passing, that a year's support of $3,000 was allowed from the estate, and that the widow and children were not left entirely without provision.

One further question remains for decision. The note held by the John Hancock Life Insurance Company, secured by deed, was dated August 23, 1902, and due August 23, 1907, with interest payable annually on November 1, and with a provision for the payment of ten per cent. attorney's fees. The note further provided that if the interest was not paid when due, the payee or owner might declare the whole debt due. One instalment of interest was not paid. Thereafter, on May 18, 1904, the attorneys

for the company gave notice to the administrator of their intention to bring suit on the note to the June term, 1904, of Bartow superior court. Subsequently, on the return day, the company and other creditors joined in the equitable petition under which the receiver was appointed and the other proceedings had. John W. Akin, Esq., also held a note which provided for the payment of attorney's fees, and as to which notice was likewise given, and suit brought by joining in the equitable petition and praying that judgment should be rendered. The auditor held that no attorney's fees could be recovered. He said that "There was no evidence before me of the election of the John Hancock Insurance Company to declare the debt due," and also that "it does not appear to me to be equitable, or that it was the purpose of the lawmakers, to have the act of 1900 bear such a construction as to impose upon an insolvent estate a large sum for attorney's fees, as contended in this case."

The giving of notice of an intention to sue for the entire indebtedness because of the failure to pay the interest, followed by the actual suit, in which it was alleged that the plaintiff had exercised its option to have the entire debt fall due and had given notice to the administrator, was evidence of an election to declare the debt due. The law does not prohibit the rendering of a judgment for attorney's fees because the debtor's estate is insolvent. Such a condition may make it more difficult, and sometimes impossible, for a creditor to realize upon his judgment; but he is not debarred from the privilege of obtaining it.

It was urged before us, that, under the act of 1900 (Acts 1900, p. 53), the debtor had the entire return day in which to pay the debt and thus avoid a judgment for attorney's fees; that this included until the very end of the return day; that the equitable suit was filed and the receiver appointed before the expiration of that day; that therefore these creditors took part in a proceeding to remove the assets from the custody of the administrator as such and place them in the hands of the receiver, and thus destroyed any right which they might have had to recover judgments for attorney's fees.

Prior to the act of 1900 the law provided that "Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, are void,

and no court shall enforce such agreement to pay attorney's fees, unless a plea or pleas be filed by the defendant and not sustained." Civil Code, §3667. By the act of December 12, 1900 (Acts 1900, p. 53), the requirement that a plea or pleas should be filed and not sustained was stricken, and the section quoted was amended so as to read as follows: "Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, are void, and no court shall enforce such agreement to pay attorney's fees, unless the debtor shall fail to pay such debt on or before the return day of the court to which suit is brought for the collection of the same; provided, the holder of the obligation sued upon, his agent or attorney, notifies the defendant in writing ten days before suit is brought of his intention to bring suit, and also the term of the court to which suit will be brought." The intention of the old law was to prevent the collection of attorney's fees provided for in a note, unless the debtor should file a defense and fail to sustain it. The amending act adopted a different scheme, which was to require notice of an intention to sue to be given at least ten days before suit should be brought, to allow the debtor until return day to pay the debt, and thus to save the creditor the necessity and expense of bringing suit at all. If he should voluntarily bring suit before return day, it would be at his own risk of being paid subsequently. To put the construction upon the act of 1900 which is insisted upon by counsel opposing the allowance of fees would make the act in substance conflict with itself. Thus it is required that the notice shall specify the term of the court to which suit will be brought. In order to bring suit to that term according to the notice, it must be brought on the return day at the latest. If it is not then brought, it can not be brought to that term, and a new notice would have to be given of a suit to another term. If the debtor is allowed until the last instant of the return day to make payment in order to avoid the necessity for the bringing of a suit, the incurring of attorney's fees, and the right to recover them, then the creditor could not know whether to bring his suit until after the return day had expired, and it was too late to sue. If the view above-expressed of the purpose of the amendment is correct, it ought to be construed as a whole in harmony therewith. The right of the debtor to pay on or before return day and the

necessity for the creditor to sue on that day should both be considered in construing the act. In this light we think that the proper construction is that the debtor shall have until return day, and as much of that day as may elapse until the suit is actually filed.

But it is said that the filing of this petition operated to render it impossible for the administrator to pay the debt. The petition alleged that the estate was insolvent; that the administrator could not pay the debts; that there was an unpaid judgment for a year's support, which could not be paid without the interposition of equity to bring the estate into a condition to be wound up; and that the administrator had no funds on hand with which to pay, and had failed to pay the indebtedness on which attorney's fees were claimed, after due notice. The auditor found that there was a judgment of $3,000 for the twelve months support of the family, which was a lien of the highest dignity against the assets of the estate, except that conveyed to creditors to secure debts; that all of the property of the estate not conveyed to secure debts was not worth half enough to pay the twelve months support and other claims of first dignity having priority over ordinary debts; that the administrator could not, without the consent of the security-deed holders, sell the encumbered lands of the estate; that the estate had no money, and he could not borrow it, to pay the note of Judge Akin, or the interest on the insurance company's note. This finding negatives the contention that the plaintiffs prevented the administrator from making payment.

The death of the debtor did not affect the law as to attorney's fees. They could be recovered against his legal representative as they could against him. It made no difference that the plaintiffs did not bring separate suits, but joined in a common equitable proceeding in which they prayed judgments for the amounts due them.

The judgment on the cross-bill, Nolan et al. *v.* Harris et al., is *reversed;* and the judgment complained of in the main bill of exceptions, being controlled by this ruling, is *affirmed.* In the case of Powers et al. *v.* Harris et al. the judgment is

*Reversed. All the Justices concur.*