## McPHAUL v. McPHAUL, executor, et al.

Where one held bond for title for the conveyance of a certain tract of land which he had formerly conveyed to the maker of the bond for title to secure the repayment of money borrowed, and died without having completed the repayment of the loan, though a part of it had been paid, his widow was not entitled to an assignment of dower in the lands for which the decedent held the bond for title, and which were covered by the security deed. Such a case does not fall within the provisions of the statute embraced in the Civil Code, § 5248, relating to the assignment of dower in land partly paid for.

No. 1634. SEPTEMBER 18, 1920.

Application for dower. Before Judge Eve. Worth superior court. August 16, 1919.

Mrs. Anna L. McPhaul, the widow of J. G. McPhaul, who died on October 29, 1917, made application for dower. The executor under the will of J. G. McPhaul, and other defendants in error, filed objections to the setting aside of dower as prayed. Upon the trial the case was submitted to the judge without the intervention of a jury, upon an agreed statement of facts as follows:

John G. McPhaul, a resident of Worth County, Georgia, died in said county on October 29, 1917, leaving surviving him certain children and the applicant for dower, Mrs. Anna L. McPhaul, she being his widow. The deceased left an estate of realty and personalty appraised at and of the fair and reasonable value of $177,684.89, against which there were owing debts to the amount of $38,264.69, and the expenses of administration and other charges are estimated to amount to $20,000.00, thus leaving a net estate of the value of $119,420.20. The gross estate consists of realty valued at $70,939.00, personalty valued at $64,235.89, and money to the amount of $41,510. The deceased left a will which was duly probated, and under which Lawrence J. McPhaul, named as the defendant herein, qualified as the executor. As executor he was duly served with notice of intention to make this application for dower, and, together with certain of the legatees of said deceased, he made appearance and filed a caveat to the return of the commissioners to assign dower, which caveat and an amendment thereto are now of file. The said applicant rejected the provision made for her in the will of the deceased, and within the time provided by law made and filed her election to take dower, and gave the executor due notice thereof, and in due course made and filed her

application for dower in the realty belonging to the estate. The realty alleged to belong to said estate and out of which dower was applied for consists of numerous lots and parts of lots in Worth county set forth in a schedule attached to the application for dower, as Exhibit A. These are of two classes, namely, those which are unencumbered and those against which there are outstanding deeds to secure debts. Of the latter class are lots Nos. 4 and 43, 139 and 184.

The deceased, on December 31, 1914, procured a loan of $10,000, and to secure the same executed to the lender a deed conveying all of the lands which he owned in lots 4 and 43 in the 7th district of Worth county, aggregating 1,005 acres. On January 23, 1915, he procured a loan of $5,000, and to secure the same executed a deed covering the lands which he owned in lots 139 and 184, in the same county and district; the last-named lands aggregating 902 acres. In each case the loans were to be repaid in annual instalments, with interest. In the case of the first loan none of the principal of the debt has been paid, but the interest thereon was paid by McPhaul during his lifetime, and by his executor, out of funds of the estate, since his death. In the case of the second loan of $5,000, McPhaul had paid all of the interest due and a portion of the principal, leaving unpaid a balance of $3,000 principal, with interest thereon. Each of the deeds above mentioned is in the form of an absolute deed, stipulating that the title to the lands covered thereby shall pass to the grantees therein, for the purpose of securing the payment of the loan therein mentioned, according to the terms therein fixed, and providing for the reconveyance of said lands by the holders thereof to McPhaul upon the payment of the debt, the stipulation being as follows: "Contemporaneous with this instrument is executed and delivered, by said party of the second part to said party of the first part, a bond to reconvey, made to conform to sections 3306 to 3317, inclusive, of the Code of Georgia 1910."

The lands covered by each of said deeds belonged to John G. McPhaul, and he was seized and possessed thereof in his own right and in fee simple, prior to and at the time of the making and delivery of each deed; and no change in the title, seizin, or possession of such lands occurred thereafter during his lifetime, except such change as may have been effected by such deeds and the

acts of McPhaul and his executor above mentioned. The possession of the lands covered by said deeds was never yielded to the grantees therein, but was held and exercised by John G. McPhaul until his death, and since that event by his executor, the said deeds only being intended, as stated in the face thereof, as deeds to secure said loans.

There is an aggregate of money and other personal property in the hands of said executor and belonging to said estate, sufficient to pay all debts, including the balances of said loans, all expenses of administration, and all charges of every kind against the deceased and his estate, without drawing upon or in any way using any portion of the realty, said estate being amply solvent and sufficient to leave all the realty, including the assignment of dower brought into controversy, and all loans affected thereby, entirely clear of all debts and charges.

The value of the lands against which there were outstanding deeds to secure debts at the time of the death of McPhaul was and has been ever since, as follows: Lot No. 43, $17,535; lot No. 4, $17,500; lot No. 184, $10,760; lot No. 139, $15,150.

Upon the hearing before the presiding judge an additional agreement was entered into by the parties, as follows: The applicant for dower having in her application referred to certain lands as having been seized and possessed by J. G. McPhaul at the time of his death, said lands being set out in Exhibit A attached to the application of the applicant, and it being a fact that the executor and the distributees of the estate of J. G. McPhaul claim that said widow is not entitled to dower in some of the lands, on the specified ground that the same are covered by security deeds, or bonds for title, to wit, the lands in lots 4 and 43, and 184 and 139 (being some of the lots listed in schedule Exhibit A), upon the suggestion of applicant's attorneys it is agreed that the commissioners appointed by the court shall, in considering the matter of dower and in making up their return, proceed as though the said lands last mentioned (which defendant claims the widow is not entitled to dower in for specific reason) constituted a separate estate; in other words, shall proceed as though they were laying off and setting aside dower out of the other lands mentioned in said application as class one, on the one hand, and then shall proceed as though they were laying off and setting aside

dower out of said lands about which there is a dispute as to the right of the widow to have dower in for said specific reason, on the other hand, as class two, and in making up their return shall mention as having been set aside as dower all the lands selected out of said first class in one paragraph which shall be numbered paragraph one, and all the lands selected out of the lands in the second class in another paragraph to be numbered paragraph two; and when said return is made to the court, the said executor shall have the full right to contest the right of the widow to have dower in said lands mentioned in said second paragraph of the return, on the ground that said widow is not entitled to dower in said lands, for said specific reason, as well as all other rights to contest said dower proceedings as to all the lands embraced in both of said paragraphs of the return. And it is fully understood and agreed that the fact that the executor has failed at this term to interpose objections to the appointment of commissioners to set aside dower under the said application, mentioning all of the lands (both the lands of class one and lands of class two above mentioned), shall not estop said executor or his privies in any way, and shall not estop them or be used in any other way nor shall it be used in the argument or in any other way to prejudice in the slightest degree any or all of the rights which the executor may have had had he made objections to the inclusion of said lands in the application for dower, or otherwise objected to said proceeding in limine.

Commissioners for the admeasurement of dower were duly appointed and qualified as required by law, and in due course made and filed their return containing two separate paragraphs, designated as "paragraph one" and "paragraph two," as provided by the agreement. The second paragraph recited that they had laid off and assigned to the applicant dower in the lands referred to, that is, all of lots 139 and 184, being a portion of the lands covered by the security deeds. The executor and the legatees, in due course and within the time provided by law, made and filed their objection to the assignment of certain of said lands as a part of the dower. When the case was submitted to the presiding judge the court rendered judgment that the return of the commissioners, in so far as it purported to assign dower out of the lands mentioned in paragraph two, be disallowed and set aside, it being adjudged

that the applicant was not entitled to have dower assigned in these lands. This judgment was excepted to by the applicant.

*J. H. Tipton,* for plaintiff.

*Pope & Bennet* and *Perry & Williamson,* for defendants.

Beck, P. J. (After stating the foregoing facts.) The decision in the case of *Harris* v. *Powers,* 129 *Ga.* 74 (58 S. E. 1038, 12 Ann. Cas. 475), and the cases which are there cited, quoted from and discussed, render unnecessary any lengthy discussion of the controlling issue in the case at bar. The opinion in *Harris* v. *Powers* contains a lengthy and elaborate discussion of the main issue here involved, and a mere repetition of that discussion would be without profit. But the following lays down a doctrine directly applicable to the issues in this case, and for that reason we make the following quotation from the decision referred to:

"Whatever may be the justice or injustice of the English rule as to dower in an equity of redemption, or what is analogous to it under our system, it was enacted by the legislature of this State, on February 25, 1784, that the common law of England, of force prior to May 14, 1776, should be of force in this State. Cobb's Digest, 721; Pol. Code, § 1, par. 3; Prince's Digest, 570. Thus then, so far as the common-law rule is applicable to the present situation, it must remain of force until changed by legislation. Under the common law, dower attached to all of the lands and tenements of which the husband was seized in fee simple or fee tail at any time during the coverture, and of which any issue which the wife might have had might by possibility have been heir. Under the law of this State, 'dower is the right of a wife to an estate for life in one third of the lands, according to valuation, including the dwelling-house (which is not to be valued unless in a town or city), of which the husband was seized and possessed at the time of his death, or to which the husband obtained title in right of his wife.' Civil Code, § 4687. . . But it will be noticed that to entitle a widow to dower the husband must have died seized and possessed. Except as modified by statute, and with a possible exception in 10 *Ga.* infra, the word 'seized' has always been treated as referring to a legal title, or certainly a perfect equity, equivalent thereto, relatively to applications for dower.

"In *Chapman* v. *Schroeder,* 10 *Ga.* 321, dower was recognized

as a legal claim. It was indeed there held that a widow was dowable of wild and uncultivated lands, whether in England she would have béen so or not, owing to the situation and circumstances of our people, as well as by reason of implications from certain laws. In *Bowen* v. *Collins*, 15 *Ga.* 100, it was held that a purchaser of land who held under a bond for title, with part of the purchase-money paid at the time of his death, was not seized and possessed of the land within the meaning of the law. It was said, that, whatever might be the meaning of the word 'seizin,' it included in it this ingredient: 'A title which is complete.' See also *Clements* v. *Bostwick*, 38 *Ga.* 1; *Day* v. *Solomon*, 40 *Ga.* 32; *Kinnebrew* v. *McWhorter*, 61 *Ga.* 33; *Raley* v. *Ross*, 59 *Ga.* 862; *Hill* v. *Hill*, 81 *Ga.* 516 (2) [8 S. E. 879]; *Pirkle* v. *Equitable Mortgage Co.*, 99 *Ga.* 524 [28 S. E. 34] (the ruling that the clause inserted in the conveyance involved in that case made it a mortgage has since been reversed in *Pitts* v. *Maier*, 115 *Ga.* 281, 285 [41 S. E. 570]); *Ferris* v. *Van Ingen*, 110 *Ga.* 102, 115 [35 S. E. 347]."

The application of this doctrine to the facts of the present case required the judgment of the court below which is complained of, unless a construction of the act of October 8, 1885, relating to the assignment of dower in lands partly paid for (now embraced in section 5248 of our Civil Code), in accordance with the views presented by counsel for plaintiff in error, takes the present case out of the operation of the rule stated in the quotation made above. Code section 5248 reads as follows: "Dower may be assigned in lands held under deed, bond for titles, or other instrument in writing having like effect, where a portion of the purchase-money has been paid, but the estate in dower shall be liable for the unpaid purchase-money where the vendee held under bond for titles or other instrument having the same effect, or under deed where contemporaneously with the execution of the deed the vendee encumbered the land with a mortgage for the purchase-money." Counsel for plaintiff in error insists that the provision of the statute quoted covers any case involving facts similar to those here involved. But it can not be made to do so, unless it is done by an extension of the provisions of this statute. This statute covers merely the instances enumerated therein, and provides for the assignment of dower in lands "held under deed, bond for title, or other instru-

ment in writing having a like effect, where a portion of the pur-
chase-money has been paid." The plain meaning of this statute
is that in a case where one desirous of acquiring other lands has
contracted for the purchase thereof and has taken a bond for title
for the conveyance of those lands to himself, his wife, where part
of the purchase-money has been paid, may have dower assigned to
her out of such lands. That is not the present case. The present
case is one of the conveyance by the owner of lands to secure a debt
and the taking of a bond for title for the reconveyance upon the
payment of that debt. To hold that a case like this falls within
the provision of Code section 5248 would be adding to and widen-
ing the terms of that statute, which a court is not authoried to do.
It is clear that but for the terms of the law embraced in section
5248 of the Code the wife would have no claim of a right of dower
in the lots of land in controversy; and as she does not bring herself
within the provisions of that statute, her claims can not be up-
held. The court properly refused to allow the return of the com-
missioners assigning dower in the lots of land referred to, and
properly refused the prayer of the applicant that she be permitted
to pay off the encumbrances on these lots of land and be subro-
gated to the rights of the holder under these encumbrances, as
well as her prayer that she be permitted to pay off the encumbrances
upon the lots of land Nos. 184 and 139, these being the two lots
embraced in the deed to the trustees named in the agreed statement
of facts.

There is no ruling in any of the cases cited in the dissenting
opinion that is contrary to this, though there are intimations based
upon a supposed state of facts.

While we have not taken up separately the exceptions to the
judgment made by the plaintiff in error and dealt with them in-
dividually, the rulings made above cover them in principle.

*Judgment affirmed. All the Justices concur, except Fish, C.
J., and Atkinson, J., dissenting.*

FISH, C. J. Where the grantor in a security deed, holding a
bond for reconveyance on payment of the secured debt, died in
possession of the land conveyed in such deed, having paid a por-
tion of the debt so secured, and leaving a solvent estate, his widow,
upon making a valid tender to the legal representative of the
estate of a sum of money sufficient to pay the balance of the

secured debt, principal and interest, was entitled to dower in the land so conveyed. And this would entitle her to a reversal in part of the judgment of which complaint is made. See *Kinnebrew* v. *McWhorter,* 61 *Ga.* 33; *Harman* v. *Strange,* 62 *Ga.* 168; *Harris* v. *Powers,* 129 *Ga.* 74 (quoted supra); *Spence* v. *Mathis,* 137 *Ga.* 514 (73 S. E. 739).

The case as above set forth falls within the provisions of the Civil Code (1910), § 5248, which declares: "Dower may be assigned in lands held under deed, bond for titles, or other instrument in writing having like effect, where a portion of the pur- chase-money has been paid, but the estate in dower shall be lia- ble for the unpaid purchase-money where the vendee held under bond for titles or other instrument having the same effect, or under deed where contemporaneously with the execution of the deed the vendee encumbered the land with a mortgage for the pur- chase-money." The grantor in the case stated being in possession, holding a bond from the grantee in the security deed to reconvey to him upon the payment of the secured debt, the bond to reconvey is "an instrument in writing having like effect" as a bond for title held by a purchaser of land; and where the grantor in the security deed has paid a portion of the secured debt, the case stands like that where the purchaser of land holding a bond for title had paid a portion of the purchase-money, for the reason that the payment by the grantor in the security deed of a portion of the secured debt, to the end that when the balance thereof should be paid he would be entitled to a reconveyance of the land, is in the nature and character of a payment of a portion of the pur- chase-money in order to regain his land, and brings the case within the scope of the Code section quoted.

*Atkinson, J., concurs in the dissent.*